**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SARAH SUMNER and WILF SUMNER,** her husband, | : |
| **Plaintiffs** | : |
| **v.** | : |
| **MARRIOTT INTERNATIONAL, INC.;** **TISHMAN HOTEL & REALTY, LP** | : |
| **Defendants** | : |

**CIVIL ACTION**

Case No.  21-6711

## COMPLAINT & JURY DEMAND

Plaintiffs Sarah Sumner and Wilf Sumner, her husband, by and through the undersigned attorneys and by way of Complaint against Defendants say:

**I.      PARTIES**

1.      Plaintiffs Sarah and Wilf Sumner are adult citizens of the United Kingdom residing in the Town of Bolton, County of Lancashire, England.

2.      Defendant Marriott International, Inc. is an international hospitality corporation headquartered in the City of Bethesda, State of Maryland described on its Wikipedia page as an "American multinational diversified hospitality company that develops, manages and franchises a broad portfolio of hotels and related lodging facilities . . . [which] is the largest hotel chain in the world by number of available rooms."  The company consists of 30 brands, including the Westin Brand, with 7,484 properties spread over 131 countries and territories around the world.

- 1 -

https://www.marriott.com/marriott/aboutmarriott.mi.    Marriott International either owned or operated or managed or licensed or franchised the Westin New York at Times Square.

3.      Defendant Tishman Hotel & Realty, LP is a limited partnership, headquartered on Park Avenue in New York, New York which "is the owner and asset manager of the Westin New York at Times Square hotel and was also the developer responsible for all aspects of the property's financing and construction. Located on 43rd Street in the heart of Times Square, the 45-story, 690,000-square-foot Westin New York at Times Square is the largest ground-up hotel construction project   completed   in   New   York   City   in   more   than   25   years." https://tishman.com/portfolio/?property_category_id=3.

## II.      JURSIDICTION AND VENUE

4.      Jurisdiction is based upon diversity of citizenship and jurisdictional amount pursuant to 28 U.S.C. §§ 1332 and 1333.

      a.  Plaintiffs are citizens of the United Kingdom of Great Britain and Northern Ireland.

      b.  Defendant Marriott International, Inc. is a citizen of the State of Maryland.

      c.  Defendant Tishman Hotel & Realty, LP is a citizen of the State of New York.

      c.  Plaintiffs' claims individually and in the aggregate exceed the sum of $75,000.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## III.     FACTUAL BACKGROUND

### A.      The Accident

6.      Sarah Sumner, age 60, is an above-the-knee amputee for most of her adult life having had her right leg electively amputated at age 28.  She had been involved in a motor vehicle

accident as a child which badly damaged her leg and never fully healed. She has had a prosthetic leg for more than 30 years which in recent years had been outfitted to a high technology, state-of-the-art limb which enabled her to walk with an outwardly normal gait.

7.      In late October 2019 she and her husband Wilf traveled to New York City to celebrate their 40th wedding anniversary. They checked into the Westin Times Square on October 25, 2019.

8.      Shortly before 7 am on October 27 Sarah woke up and went to use the bathroom in her hotel room. Not wishing to wake Wilf up, she did not turn the light on in the room and proceeded on one leg to the bathroom. Like most amputees she does not wear her prosthesis in bed and only puts it on when she is ready for the day. As it was her intention to return to bed, she did not put it on at that time but proceeded to rely on her left leg – a skill she has honed over thirty years as an amputee – while steadying herself against the wall.

9.      The bathroom was on the right side of a short corridor leading from the bedroom. The bedroom was carpeted but the corridor leading to the bathroom was tiled. The carpet and tile were separated by a type of molded rubber threshold. A motion sensitive light in the corridor should have come on as she approached but didn't and as she transitioned



*View from Bedroom into Hallway*

from the carpet to the tiled floor she felt her left big toe catch under something and she twisted and fell on her right side. She called out to Wilf who helped her back to bed. When Wilf turned the

lights on and opened the curtains he observed that the right side of the threshold (viewed from the bedroom into the hallway) was not properly fixed to the floor and he was able to slide two fingers under and run them from the wall to the end of the first tile.



*View into the Bedroom*

10.     After about a half-hour, plaintiffs realized that Sarah's injuries were serious and they called down to the front desk to report what had happened.  A hotel employee, who the Sumners believed was from hotel security, responded and completed an incident report which included multiple photographs.  The employee acknowledged that the threshold was not properly fixed to the floor and he also attempted, without success, to get the light in the corridor to turn on. The hotel arranged for an ambulance to take Sarah to Mt. Sinai hospital where she was diagnosed with a hip fracture on the amputated leg and underwent surgery the next day.

11.     When Wilf returned to the hotel on the 27th he informed hotel management that his wife was going to have surgery and that he would need to extend his stay by at least two nights as a result.  4 days later, when Wilf returned to the hotel after visiting Sarah in the hospital, he noticed that the corridor light had been repaired and he saw that some effort to fix the threshold had been made but that it was still raised.



*View as Repaired*

**B.      Injuries & Treatment**

12.    In the fall Sarah suffered a "basicervical/intertrochanteric traumatic fracture of the right proximal femur" and she was admitted for surgical reduction. The following day she underwent "right hip closed reduction [with] short cephalomedullary nailing [utilizing a gamma nail]" for a "right intertrochanteric femur fracture."



*Gamma Nail*

13.    She was released on post-op day six and returned home to the United Kingdom where she came under the care of Gordon Shepard, an orthopedic surgeon.

14.    Due to swelling from the injury and the surgery Sarah was unable to utilize her prosthetic leg because it would not fit over the amputated stump.  Additionally, Dr. Shepard noted that the gamma nail implanted to reduce the fracture was "more prominent" than expected--that is it extended beyond the end of the amputated stump--and would necessitate re-fitting the prosthesis to accommodate the nail once the swelling lessened.  Dr. Shepard also anticipated removing the gamma nail once the fracture had fully healed which he anticipated would take at least a year.

15.    As a result of the severe lockdowns imposed in the United Kingdom related to the Covid-19 pandemic, Sarah could not be fitted for a modified prosthesis until December 2020 and she took delivery of the re-fabricated limb in January 2021  For more than a year following the accident she had no or very limited use of her artificial leg and became significantly de-conditioned

as a result.  Even when she received the modified limb it remained painful to use because of the prominent nail which causes her to limp.

16.     Sarah is scheduled for surgery to remove the gamma nail at the end of May 2021 and will not be able to use her prosthesis for 6 to 8 weeks following surgery.  Additionally, the limb will once again have to be re-fitted and re-fabricated and she will require physical therapy to accommodate the modified prosthesis.

17.     As result of her injuries Sarah has not only sustained significant pain and suffering but has been unable to utilize a life-altering medical device specially fabricated for her for an extended period of time, the loss of use of which has significantly impaired her activities of daily living and quality of life. Instead of being merely an amputee with a prosthetic limb, functional an independent, Sarah now feels disabled.

## **FIRST COUNT**

Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

18.     At all times material hereto, Defendants, and each of them, were innkeepers and "bound by a duty to exercise reasonable care for the convenience, comfort, and safety of their guests, which includes protecting those guests from harm and providing the inn as a safe harbor." *Young-Gibson v. Patel*, 2011 WL 3475451, *3 (W.D.N.Y. 2011).

19.     At the times and places aforesaid, and at all times material hereto, defendants, and each of them failed to maintain the premises in a safe condition and breached their duties to exercise reasonable care to provide for the safety and comfort of their guests.  Without limitation, defendants failed either to conduct proper inspections of the premises to discover potentially

hazardous conditions and/or otherwise failed to maintain the premises in a safe condition for guests and/or failed to properly repair or mitigate such hazardous conditions when identified.

20.     As a foreseeable, direct and proximate result of defendants' negligence, as hereinbefore set forth, plaintiff Sarah Sumner sustained serious and permanent bodily injury and otherwise sustained damages compensable under the laws of the State of New York and United States.

WHEREFORE, plaintiffs demand judgment against defendants individually, jointly, severally and in the alternative for compensatory damages plus interest, attorney's fees, costs of suit and such other relief the court deems equitable and just.

## SECOND COUNT

Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

21.     At the times and places aforesaid, and at all times material hereto, plaintiff Wilf Sumner was the husband of plaintiff Sarah Sumner and entitled to his wife's comfort, companionship, consortium, counsel, advice, guidance, society and services.

22.     As a foreseeable, direct and proximate result of the negligence of defendants, as hereinbefore set forth, plaintiff Wilf Sumner has been, and will in the future be, deprived of his wife's comfort, companionship, consortium, counsel, advice, guidance, society and services and otherwise sustained damages under the laws of the State of New York and/or United States.

WHEREFORE plaintiffs demand judgment against defendants individually, jointly, severally and in the alternative for compensatory damages plus interest, attorney's fees, costs of suit and such other relief the court deems equitable and just.

2290057.2

## DEMAND FOR TRIAL BY JURY

Plaintiffs Sarah Sumner and Wilf Sumner, her husband, hereby demand trial by jury as to all issues so triable.

Dated:  August 9, 2021

Wendy R. Fleishman
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: wfleishman@lchb.com

Kevin Haverty (*pro hac vice forthcoming*)
WILLIAMS CEDAR LLC
8 Kings Highway West, Suite B
Haddonfield, NJ  08033
Telephone: (856) 470-9777
Fax: (888) 311-4899
Email: khaverty@williamscedar.com

2290057.2